IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMY FAIRCHILD,

    Plaintiff,

v.                                          CIV 13-0911 KBM/LFG

PROGRESSIVE DIRECT INSURANCE
COMPANY, VALINA HAMILTON,
Individually and/or on behalf of
PROGRESSIVE DIRECT INSURANCE COMPANY,
and yet-to-be identified Employees/Agents
of Progressive Direct Insurance Company,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Remand (*Doc. 6*), filed September 30, 2013, and on Defendant Valina Hamilton's Motion to Dismiss (*Doc. 10*), filed October 9, 2013. Having reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that the Motion to Remand is well-taken and will be granted and that the Motion to Dismiss is moot, as the Court is without jurisdiction to entertain the motion.

I.    **BACKGROUND**

Plaintiff filed her Complaint on August 12, 2013, alleging various state law causes of action against Defendant Progressive Direct Insurance Company ("Defendant Progressive Direct"), her automobile insurer, and Defendant Valina Hamilton ("Defendant Hamilton"), the Progressive employee assigned to process

and to settle her underinsured motorist claim. *Doc. 1, Ex. A.* Plaintiff made a claim for underinsured motorist benefits for injuries that she sustained on or about September 30, 2009, when someone opened a van door and struck her in the face. *Id.* As to Defendant Progressive Direct, Plaintiff asserts claims for Bad Faith Breach of Contract, Insurance Bad Faith, Intentional Infliction of Emotional Distress, Violations of the New Mexico Unfair Insurance Practices Act and the New Mexico Unfair Trade Practices Act, Civil Conspiracy, Negligent Hiring, Training, Supervision and Retention, and Breach of Fiduciary Duty. *Id.* As to Defendant Hamilton, Plaintiff asserts claims for Insurance Bad Faith, Intentional Infliction of Emotional Distress, Intentional Interference with a Contract, and Civil Conspiracy. *Id.*

Defendants removed the action to this Court on September 20, 2013, asserting that the Court has diversity jurisdiction over Plaintiff's claims. *Doc. 1* at 2. In their Notice of Removal, Defendants contend that, while Defendant Hamilton is a New Mexico resident, she was fraudulently joined in this action. *Id.*

## II.    LEGAL STANDARD

An action is removable if the federal district court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). It is the obligation of the removing party to establish the subject matter jurisdiction of the federal court. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999). There is a presumption against removal jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Both the requisite amount in controversy and the existence of diversity must be affirmatively established by a preponderance of

the evidence on the face of either the complaint or the removal notice for purposes of diversity jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). Diversity jurisdiction requires complete diversity in that no plaintiff be the citizen of the same state as any defendant. *Gadlin v. Sybron Intern. Corp.*, 222 F.3d 797, 799 (10th Cir. 2000). Furthermore, a defendant may only remove the action to federal court if no defendant "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

## III. ANALYSIS

### A. Amount in Controversy

The Court raises the issue of the amount of controversy *sua sponte*. Although Defendants contend in their Notice of Removal that this Court has diversity jurisdiction, they do not specifically allege that more than $75,000 is in controversy. Indeed, Defendants allege that "[t]he basis for federal court jurisdiction is compete diversity of the parties," omitting any discussion of the jurisdictional amount. *See Doc. 1* at ¶ 2.

Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — citizens of different States." 28 U.S.C. § 1332(a). The amount in controversy is generally determined by the allegations of the complaint, or if they are not dispositive, by the allegations in the notice of removal. *Laughlin*, 50 F.3d at 873. When the amount in controversy is not apparent on the face of the complaint, a federal court must attempt to ascertain the amount in controversy by considering: (1) the plaintiff's cause of action as

3

alleged in the complaint, (2) the notice of removal that the defendant filed with the federal court, and (3) other relevant materials in the record. *Varela v. Wal-Mart Stores, East, Inc.*, 86 F. Supp. 2d 1109, 1111 (D.N.M. 2000) (Baldock, J., sitting by designation).

However, "[i]t would be an overreading of *Laughlin* to ignore the context of the case, as informed by the substance of the complaint or by other material in the record at the time of removal." *Hanna v. Miller*, 163 F. Supp. 2d 1302, 1305 (D.N.M. 2001) (Kelly, J., sitting by designation). Courts may therefore consider "the substance and nature of the injuries and damages described in the pleadings, any attorney affidavits filed prior to or in connection with the removal notice, a plaintiff's prior admission in open court that the value of the claim exceeds the jurisdictional amount, or even a plaintiff's refusal to stipulate or admit that he or she is not seeking damages in excess of the requisite amount." *Id.* at 1306. Punitive damages and attorney's fees may be considered in determining the amount in controversy, *see Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1217-18 (10th Cir. 2003); costs and interest, however, are excluded, *see* 28 U.S.C. § 1332(a). Ultimately, the burden is on the party requesting removal to set forth in the notice of removal the underlying facts supporting diversity jurisdiction. *Laughlin*, 50 F.3d at 873.

In this case, Plaintiff brought suit against Defendants for various state law torts in connection with her claim, and the handling of her claim, for underinsured motorist coverage under her policy with Defendant Progressive Direct. According to her Complaint, Plaintiff seeks, in addition to costs and interest,

4

actual and consequential damages, treble damages, emotional distress damages, statutory attorney's fees, and punitive damages.  Plaintiff does not, however, allege a specific amount of damages, nor does she provide any details as to how much she claims in underinsured motorist benefits or the amount of her policy limits.

In Defendants' Notice of Removal, Defendants likewise fail to provide any detail about Plaintiff's alleged damages.  Defendants do not even reference the various categories of damages demanded by Plaintiff in her Complaint, let alone provide any factual predicate suggesting that the amount in controversy exceeds $75,000.  Defendants fail to provide even a single figure upon which the Court may evaluate the amount in controversy.

Additionally, although the Court must consider a potential treble damages award and punitive damages award in evaluating the amount in controversy, Defendants have failed to provide the Court with any underlying facts to evaluate such awards.  Absent facts suggesting the amount of a potential compensatory damages award, the Court will not presume that any treble damages award or punitive damages award might cause the value of the controversy to exceed the jurisdictional amount.  *See Beaumont v. Fortis Benefits Ins. Co.*, 2008 WL 906186, *5 (N.D. Okla. Mar. 29, 2008) (unpublished opinion) ("The mere possibility that punitive damages could exceed the jurisdictional amount is not enough to meet the burden of establishing federal court jurisdiction.")

In sum, based upon the record before it, the Court is unable to conclude that Plaintiff's insurance-related injuries give rise to a claim of at least $75,000.

Defendants' removal appears to be based on speculation as to the amount of damages, rather than underlying facts of the minimum jurisdictional amount proven by a preponderance of the evidence.  Given that uncertainties as to jurisdiction are resolved in favor of remand, the Court concludes that Defendants' failure to establish, or even to allege, the requisite amount in controversy is an adequate independent reason for remanding this matter to state court.

### B.  Fraudulent Joinder Claim

In the alternative, the Court considers the merits of Plaintiff's Motion to Remand and concludes that Defendants have likewise failed to establish the fraudulent joinder of Defendant Hamilton.  Remand is therefore also proper on this basis as well.

In their Motion to Remand, Plaintiff argues that diversity of citizenship does not exist in this case because one of the properly-named defendants, Defendant Hamilton, is a citizen of the same state as Plaintiff.  In contrast, Defendants argue, both in their Notice of Removal and in their Response to Plaintiff's Motion to Remand, that Defendant Hamilton was fraudulently or improperly joined in this action and that her citizenship should therefore be disregarded for purposes of diversity jurisdiction.

Generally, whether a case is removable is determined by the original pleadings, and the statement of a cause of action against a resident defendant will normally be sufficient to prevent removal.  *See Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964).  However, upon specific allegations of fraudulent joinder, as here, the Court may pierce the pleadings and consider the

6

entire record, determining the basis of joinder by any means available. *Id.* "The joinder of a resident defendant against whom no cause of action is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." *Id.* (internal citation omitted).

A defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty. *See Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999) (citing *McLeod v. Cities Service Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956)). The burden of proof on a defendant claiming fraudulent joinder is significant. *Id.* at 1147. In *Montano v. Allstate Indemnity Co.*, the Tenth Circuit described the defendant's burden to prove fraudulent joinder as follows:

> To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is *no possibility* that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

99-2225, 211 F.3d 1278, 2000 WL 525592, *1 (10th Cir. Apr. 14, 2000) (unpublished opinion) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)) (emphasis added). "Moreover, this District has consistently adopted the 'possibility' standard when assessing fraudulent joinder claims." *Zufelt v. Isuzu Motors America, L.C.C.*, 727 F. Supp. 2d 1117, 1129 (D.N.M. 2009). This possibility standard is "more exacting" than the standard under Federal Rule of Civil Procedure 12(b)(6), and there is no need for the plaintiff to ultimately succeed on the claim against the resident

7

defendant in order to defeat removal jurisdiction. *See Couch,* 71 F. Supp. 2d at 1146-47. Remand is required if any one of the claims against the non-diverse defendant is possibly viable. *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983).

Thus, so long as there is some possibility that a New Mexico court could find that Plaintiff can make a claim against Defendant Hamilton, her joinder is not fraudulent. Plaintiff argues that remand is proper because: 1) Defendants cite no facts or law within their Notice of Removal to support their allegation of "fraudulent joinder"; 2) Plaintiff's complaint contains "clearly articulated legal claims involving intentional interference with Plaintiff's contract of insurance with Progressive; and 3) Defendants did not include in their Notice of Removal copies of the summonses served on Defendants (*Doc. 6* at 6).

Defendants filed a Stipulation on October 9, 2013, in which they indicate that Defendant Hamilton was acting as an agent on behalf of Defendant Progressive Direct at all material times and that Defendant Progressive Direct "agrees to defend, indemnify and hold Ms. Hamilton harmless from and against any and all liability in this cause." *Doc. 9*. In their Response to Plaintiff's Motion to Remand, Defendants rely upon this stipulation, arguing that an agent acting within his authority for a disclosed principal is not personally liable unless he was expressly made a party of the contract or unless he conducts himself in such a manner as to indicate intent to be bound. *Doc. 11* (citing *Roller v. Smith*, 544 P.2d 287, 288 (N.M. Ct. App. 1975).

Defendants' analysis is correct with respect to the assertion of contract claims against Defendant Hamilton. Given that Defendant Hamilton was acting

8

as an agent for a disclosed principal, Defendant Progressive Direct, she was not a party to the insurance contract between Plaintiff and Defendant Progressive Direct and therefore not liable under the contract. *See Kreischer v. Armijo*, 884 P.2d 827, 831 (N.M. Ct. App. 1994). However, it does not necessarily follow that Plaintiff may not assert claims against Defendant Hamilton sounding in tort. "[A]n agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal." *Kreischer v. Armijo*, 884 P.2d 827, 829 (N.M. Ct. App. 1994) (citing Restatement (Second) of Agency § § 348, 350 (1958)). Moreover, that Defendant Progressive Direct has agreed to indemnity Defendant Hamilton for any individual liability that she incurs in this suit does not directly affect the inquiry before the Court -- the viability of Plaintiff's claims against Defendant Hamilton under the fraudulent joinder standard.

While Plaintiff has not made a particularly strong showing as to the merit of her claims against Defendant Hamilton, she has at least presented some evidence demonstrating Defendant Hamilton's direct involvement in the processing of her underinsurance claim. For example, Plaintiff submits correspondence from Defendant Hamilton in which Defendant Hamilton indicates that a records review is necessary before Plaintiff's claim is paid. *Doc. 6, Ex. A*. Thus, there may be some basis in fact for a possible tort claim against Defendant Hamilton.

Although far from conclusive as to viability, there is also some basis in law for certain of Plaintiff's claims against Defendant Hamilton. In *Dellaira v. Farmers Ins. Exchange*, 102 P.3d 111 (N.M. Ct. App. 2004), the plaintiffs sued an entity

9

other than the insurer, which directed, handled, administered and adjusted claims that were submitted by the insurer's policyholders (hereinafter "adjusting entity"). The New Mexico Court of Appeals determined that even though the adjusting entity was not a party to the plaintiffs' insurance contract, the plaintiffs nevertheless stated a cause of action for breach of the duty to act in good faith against this adjusting entity, and that, "under some state of facts, relief might possibly be granted." *Id.* at 116; *see also id.* at 113 (noting without further discussion that the trial court allowed the plaintiffs to amend their complaint to add a claim for civil conspiracy against the adjusting entity); *cf. McNeill v. Security Ben. Life Insur. Co.*, 28 F.3d 891, 893-94 (8th Cir. 1994) (reasoning that an insurer can be held liable for tortious interference with the business relationships that an insurance agent has with his clients).

      Having considered the record as a whole, the Court cannot conclude that there is no possibility that Plaintiff can establish a cause of action against Defendant Hamilton under New Mexico law. Defendants simply have not demonstrated the level of certainty required to establish fraudulent joinder. For instance, they have not come forward with any binding, settled case law providing that an insured may not assert tort claims against an insurer's employee or agent under the theories upon which Plaintiff relies.

      Defendants rely primarily upon a case from the Eastern District of California, *Gasnik v. State Farm Insur. Co.*, 825 F. Supp. 245 (E.D. Cal. 1992). In *Gasnik*, the court reasoned that "in California it is settled law that an agent acting within the course and scope of his employment cannot be held liable for damages resulting

from a negligent failure to insure." *Id*. at 249. *Gasnik* is nonbinding and is easily distinguishable. Unlike in *Gasnik*, Defendants here have not referred the Court to any settled New Mexico law precluding liability for the particular claims Plaintiff asserts against Defendant Hamilton; nor has Plaintiff asserted a claim for negligent failure to insure as in *Gasnik*.

It would be inappropriate for the Court, upon Defendants' somewhat conclusory allegation of fraudulent joinder, to independently delve into the intricacies of Plaintiff's theories of liability or to decide the merit of her claims in summary fashion. *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (reasoning that fraudulent joinder issues must be "capable of summary determination and . . . proven with complete certainty"); *Batoff v. State Farm*, 977 F.2d 848, 853 (3d Cir. 1992) (holding that "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."). New Mexico courts are better suited to determine the contours of Plaintiff's state tort claims against an agent of her insurer.

As such, viewing all ambiguities in the law and questions of fact in favor of Plaintiff, as the nonremoving party, the Court concludes that Plaintiff's claims against Defendant Hamilton are "possibly viable" under New Mexico law and suffice to preclude federal diversity jurisdiction. The matter must, therefore, be remanded to state court.

Finally, Plaintiff requests that the Court award her attorney fees incurred as a result of Defendants' improper removal of the case to federal court. The

11

language of 28 U.S.C. § 1447(c) directs that the award of attorney's fees rests squarely within the discretion of the district court when a remand is ordered. *See* § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). As the Tenth Circuit has recognized, "[i]n deciding whether to award costs under § 1447(c), the key factor is the propriety of the defendant's removal. The district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c)." *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997). On the other hand, attorney's fees may be denied where the defendant "had a fair basis for removing the case." *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 324 (10th Cir. 1994). The proper inquiry is whether the defendant had objectively reasonable grounds to believe the removal was legally proper. *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1147 (10th Cir. 2004)

     Here, the Court declines to award Plaintiff her attorney's fees. While the Court decides against Defendants on the merits of removal, the Court finds that such removal was premised upon a reasonable belief that there had been a fraudulent joinder.

     **Wherefore,**

     **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand *(Doc. 6)* is granted;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss *(Doc. 10)* is moot;

**IT IS FINALLY ORDERED** that this matter is hereby **remanded to the First Judicial District Court for the State of New Mexico.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent of the Parties